T.C. Memo. 1997-329

UNITED STATES TAX COURT

DENNIS J. AND TERESA DENEAULT, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14717-94.                          Filed July 21, 1997.

Dennis J. and Teresa Deneault, pro se.

<u>Michael D. Zima</u>, for respondent.

MEMORANDUM OPINION

DAWSON, <u>Judge</u>:  This case was assigned to Chief Special
Trial Judge Peter J. Panuthos pursuant to the provisions of
section 7443A(b)(4) and Rules 180, 181, and 183.[1]  The Court

---

[1]  All section references are to the Internal Revenue Code
in effect for the year in issue, and all Rule references are to
the Tax Court Rules of Practice and Procedure.

agrees with and adopts the opinion of the Special Trial Judge, which is set forth below.

### OPINION OF THE SPECIAL TRIAL JUDGE

PANUTHOS, Chief Special Trial Judge:  This matter is before the Court on respondent's Motion for Judgment on the Pleadings, filed May 15, 1997.  As explained in greater detail below, we will grant respondent's motion.

Background

Respondent issued a notice of deficiency to petitioners determining a deficiency in their Federal income tax for 1991 in the amount of $61,304 and an addition to tax for fraud under section 6663 in the amount of $45,978.  Petitioners invoked the Court's jurisdiction by filing a timely (but imperfect) petition for redetermination, followed by a proper amended petition.[2]

Respondent filed an answer to the amended petition, including therein specific allegations regarding the method of income reconstruction that respondent relied upon in determining the deficiency in this case, as well as specific allegations in support of respondent's determination that petitioners' entire underpayment of tax for 1991 is attributable to fraud. Petitioners failed to file a reply to respondent's answer. Consequently, respondent filed a motion pursuant to Rule 37(c)

---

[2]  At the time the imperfect petition was filed, petitioner Dennis J. Deneault was incarcerated at Eglin Air Force Base, Florida, and petitioner Teresa Deneault resided in Florida.

that undenied allegations in respondent's answer to the amended petition be deemed admitted. The Court issued an order to petitioners advising them of the filing of respondent's motion under Rule 37(c) and directing petitioners to file a reply to respondent's answer on or before April 6, 1997.

Petitioners failed to file a reply to respondent's answer or otherwise respond to the Court's order. Consequently, we granted respondent's Rule 37(c) motion, and the undenied allegations set forth in respondent's answer were deemed to be admitted. See Doncaster v. Commissioner, 77 T.C. 334, 336 (1981); Gilday v. Commissioner, 62 T.C. 260, 261 (1974).

As indicated, respondent now moves for judgment on the pleadings with respect to petitioners' liability for the deficiency and the fraud penalty set forth in the notice of deficiency. By order dated May 20, 1997, petitioners were notified that respondent's motion was calendared for hearing at the motions session of the Court in Washington, D.C., on June 25, 1997. In addition, petitioners were directed to file a written response in opposition to respondent's motion. Petitioners did not respond to the Court's order.

Counsel for respondent appeared at the hearing and presented argument in support of the motion. No appearance was made by or

on behalf of petitioners at the hearing, nor did petitioners file a statement with the Court pursuant to Rule 50(c).[3]

Facts Deemed Admitted

By virtue of the Court's granting of respondent's motion under Rule 37(c), petitioners are deemed to have admitted the following facts:

> 1.   During 1991, the petitioners lived in Ft. Pierce, Florida.  They have three daughters:  Mandy, Crystal, and Sarah Deneault.
>
> 2.   Dennis J. Deneault is a wire lather by trade, and engaged in a wire lathing sole proprietorship during 1991.
>
> 3.   Teresa Deneault worked for Cale of Ft. Myers, Inc., doing business as Kirby Auto during 1991, earning $3,177.06 in wages.
>
> 4.   During 1991, Dennis J. Deneault was engaged in the illegal trafficking and sale of narcotics and, as such, made illegal unrecorded cash sales of narcotics.
>
> 5.   Petitioners realized substantial cash sums of income generated from the illegal narcotic trafficking business, which substantial cash sums enabled petitioners to maintain a standard of living inconsistent with the income reported from all other legal sources on their joint 1991 Federal income tax return.  Petitioners also failed to report $9,725 of income which was prematurely withdrawn from an individual retirement account and placed in a joint savings account by the petitioners.  Neither the income from marijuana sales nor the withdrawals from the IRA account were included on the petitioners' joint Federal income tax return for the year 1991.

---

[3] Petitioners were reminded of the applicability of Rule 50(c) in the Court's order dated May 20, 1997, and expressly that they could submit a written statement in lieu of (or in addition to) attendance at the hearing.

6. Petitioners maintained no sales invoices or other records relating to the illegal sales of narcotics during 1991.

7. On June 18, 1991, Dennis J. Deneault was arrested by the St. Lucie County Sheriff's Office for the possession and attempted sale of marijuana.

8. During questioning by the St. Lucie County Sheriff's officers on June 18, 1991, Dennis J. Deneault disclosed that on June 17, 1991, he had purchased ten pounds of marijuana for $18,500, and that on June 18, 1991, he had purchased 17 pounds of marijuana for $25,000.

9. During the execution of a search warrant in 1991, $300.00 in cash was seized from a pickup truck on the petitioners' real property.

10. The petitioners filed a joint 1991 Federal income tax return on April 15, 1992, on which they reported adjusted gross income of $5,882.00. The petitioners reported $3,177.00 in wages, and $2,976.00 of business income from Dennis J. Deneault's business as a wire lather.

11. The respondent has determined petitioners' correct taxable income for 1991 on the basis of the source and application of funds method based on information provided from petitioners' joint 1991 Federal income tax return, information secured from files relating to the arrest and conviction of Dennis J. Deneault in 1991, and information provided by petitioners during a hearing with the Appeals Division, as follows:

<u>SOURCES</u>

(a) Petitioners reported taxable interest income of $3.00 on their joint 1991 Federal income tax return.

(b) Petitioners reported gross receipts of $4,500 from their Schedule C activity for 1991 on their joint 1991 Federal income tax return.

(c) During 1991, the petitioners received a Federal tax refund in the amount of $1,253.00, relating to the taxable year 1989.

(d)   The petitioners reported $3,177.00 of wage income on their joint 1991 Federal income tax return.

(e)   The petitioners received $6,142.00 by closing out their bank account at First Union National Bank of Florida on August 12, 1991.

(f)   The petitioners cashed in a certificate of deposit for $4,681 during 1991.

APPLICATIONS

(g)   Respondent determined that petitioners' living expenses for 1991 were in the amount of $13,962.

(h)   During a search of petitioners' property during 1991, local law enforcement officers found and seized $300.00 in cash from a pickup truck.

(i)   On February 1, 1991, the petitioners purchased two lots in St. Lucie County, for a total purchase price of $9,000.00.  They paid cash for the real properties on that date.

(j)   The petitioners made payments on their 1989 Lincoln automobile in an amount totaling $3,206.00 during 1991.

(k)   On June 17, 1991, Dennis J. Deneault purchased ten pounds of marijuana for $18,500.  On June 18, 1991, Dennis J. Deneault purchased seventeen pounds of marijuana for $25,000.

(l)   According to the joint 1991 Federal income tax return, during 1991 Dennis J. Deneault incurred $1,524 in business expenses relating to his wire lathing sole proprietorship.

(m)   During 1991, Federal income tax was withheld from Teresa Deneault in the amount of $291.79. Social security tax was withheld from Mrs. Deneault in the amount of $196.97.  Medicare tax was withheld from Teresa Deneault in the amount of $46.07.

(n)   The petitioners paid a $60.00 penalty to Barnett Bank on June 21, 1991.

(o)  According to their federal income tax return, during 1991 the petitioners incurred medical expenses of $1,590, paid property taxes of $1,148.00, and paid $4,319 in interest payments.  Per the return, they also incurred $20 in miscellaneous deductions. All of these amounts were reflected on schedule A of the 1991 joint Federal income tax return.

(p)  Federal tax payments were made during 1991 totaling $2,744.

(q)  According to the public records of St. Lucie County, the petitioners paid $2,500 relating to a seizure of property during 1991.

(r)  During 1991, the petitioners placed $117,000 into a safety deposit box in the name of a Mr. and Mrs. Peter Boyle.

(s)  The net change in the petitioners' joint account balance at Riverside National Bank during 1991 was a plus $1,100.

12.  Petitioners have no non-taxable sources of funds or excludible receipts which would require adjustments in respondent's source and application method for determining petitioners' 1991 taxable income, such as loans or inheritances.

13.  The petitioners made misleading statements to agents of the respondent during their investigations relative to the asset acquisitions and illegal narcotic trafficking transactions as engaged in by the petitioners during the taxable year 1991.  In an interview with Internal Revenue Service Revenue Agent John Halligan at an Internal Revenue Service office occurring January 6, 1993, Mrs. Teresa Deneault told Mr. Halligan that the information on the petitioners' Federal income tax return for the year 1991 was correct.  When asked if the petitioners ever possessed or had access to safe deposit boxes, Mrs. Deneault responded in the negative, despite there being bank records of the petitioners' leasing such boxes during the year 1991.  Mr. Dennis Deneault also answered negatively to this question.

14.  The petitioners attempted to conceal assets by using nominees to hold their money.  They rented safety deposit boxes from banks, and placed substantial

portions of their drug proceeds into them. The petitioners' neighbors, Mr. and Mrs. Peter Boyle, held $117,000.00 for the taxpayers in a safety deposit box which was opened in 1991. Dennis J. Deneault's mother held approximately $25,000.00 in a safety deposit box for the petitioners which was opened in 1991.

15. The safety deposit boxes were opened by the petitioners in 1991. Keys to the safety deposit boxes were held only by the petitioners. The nominees knew that they were holding the money for the petitioners, and were not permitted to withdraw any portion of the money.

16. When their Internal Revenue Service audit began, the petitioners continued to attempt to conceal assets from the Service. Upon receiving notice by letter of the examination of their 1991 income tax return, the petitioners inquired of acquaintances as to how to hide assets from the Internal Revenue Service. They were told to place assets into an irrevocable trust, and actually took steps to complete such an instrument.

17. The petitioners have made implausible or inconsistent explanations of their conduct during 1991. They have made statements denying the existence of any safety deposit boxes to which they had access during 1991. These are implausible statements, in light of the fact that they opened the safety boxes and were the only parties with keys to the boxes. The petitioners' explanations have been inconsistent with their behavior, such as their inquiring of acquaintances as to how to hide assets from the Internal Revenue Service.

18. Petitioners fraudulently understated their taxable income during the 1993[4] taxable year in the amount of $182,752, with the intent to evade the payment of taxes on such income.

19. All of the underpayment of tax required to be shown on petitioners' joint 1991 Federal income tax return is due to fraud.

---

[4] At the hearing on this matter, respondent's counsel stated that the reference to "1993" in par. 18 of the Answer to Amended Petition is a typographical error and should be "1991".

Discussion

Rule 120(a) provides that after the pleadings are closed and within such time as not to delay the trial, any party may move for judgment on the pleadings. A motion for judgment on the pleadings is appropriate only where the pleadings do not raise a genuine issue of material fact, but rather involve issues that may be decided as a matter of law. Thus, respondent's motion is to be granted only if, on the admitted facts, respondent is entitled to decision as a matter of law. Anthony v. Commissioner, 66 T.C. 367 (1976), affd. without published opinion 566 F.2d 1168 (3d Cir. 1977). The determinations made by respondent in the notice of deficiency are presumed correct; the burden of proof is on petitioners to show that these determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933); Rockwell v. Commissioner, 512 F.2d 882, 887 (9th Cir. 1975), affg. T.C. Memo. 1972-133.

The factual allegations deemed admitted under Rule 37(c) establish that petitioners failed to report income in the amount of $182,752 for the taxable year 1991, an amount that is primarily attributable to petitioner Dennis J. Deneault's sales of illegal narcotics. In addition, petitioners failed to maintain, or submit to respondent for examination, adequate books or records regarding the income and expenses relating to their income during the year in issue. Consistent with these deemed

admissions, it follows that respondent is entitled to judgment on the pleadings that petitioners are liable for the deficiency in tax for 1991 as set forth in the notice of deficiency.

Respondent also determined that petitioners are liable for the penalty for fraud under section 6663(a) for 1991.  Section 6663(a) provides that if any part of the underpayment of tax required to be shown on the return is due to fraud, there shall be added to the tax an amount equal to 75 percent of the portion of the underpayment that is attributable to fraud.

Fraud is defined as an intentional wrongdoing designed to evade tax believed to be owing.  Zell v. Commissioner, 763 F.2d 1139, 1142-1143 (10th Cir. 1985), affg. T.C. Memo. 1984-152; Webb v. Commissioner, 394 F.2d 366, 377 (5th Cir. 1968), affg. T.C. Memo. 1966-81, and cases cited therein.  Respondent has the burden to prove fraud by clear and convincing evidence.  Sec. 7454(a); Rule 142(b).  Fraud is a question of fact to be resolved upon consideration of the entire record and is never presumed. Estate of Pittard v. Commissioner, 69 T.C. 391, 400 (1977). Respondent's burden of proving fraud can be met by facts deemed admitted pursuant to Rule 37(c).  Doncaster v. Commissioner, 77 T.C. 334, 337 (1981); see Marshall v. Commissioner, 85 T.C. 267, 272-273 (1985).

In the instant case, petitioners are deemed to have admitted, pursuant to Rule 37(c), that they attempted to conceal from respondent the source and amount of the income that

petitioner Dennis J. Deneault realized from sales of illegal drugs in 1991. Further, petitioners are deemed to have admitted that they fraudulently and with the intent to evade taxes understated their taxable income for 1991 in the amount of $182,752, and that the underpayment of tax required to be shown on their income tax return for 1991 is due to fraud.

We hold that the facts deemed admitted pursuant to Rule 37(c) satisfy respondent's burden of proving fraud. Doncaster v. Commissioner, supra at 337.[5] Those facts constitute clear and convincing evidence that petitioners failed to report the income derived from sales of illegal drugs during 1991 fraudulently and with the intent to evade taxes known to be owing and that the entire underpayment of taxes required to be shown on petitioners' 1991 income tax return is due to fraud. Consequently, respondent is entitled to judgment on the pleadings that petitioners are liable for the penalty for fraud under section 6663(a) for the taxable year 1991.

To reflect the foregoing,

---

[5] See also Marshall v. Commissioner, 85 T.C. 267 (1985); Davis v. Commissioner, T.C. Memo. 1993-324; Cruise v. Commissioner, T.C. Memo. 1992-688; Asher v. Commissioner, T.C. Memo. 1992-377; Eisenstein v. Commissioner, T.C. Memo. 1987-241; Dimsdale v. Commissioner, T.C. Memo. 1987-53; Ricotta v. Commissioner, T.C. Memo. 1986-508; Twist v. Commissioner, T.C. Memo. 1986-497; Siravo v. Commissioner, T.C. Memo. 1986-482; Jackson v. Commissioner, T.C. Memo. 1986-15.

- 12 -

An order granting respondent's Motion for Judgment on the Pleadings and decision for respondent will b entered.